Scott Pomerantz (SBN: 214328)
LAW OFFICE OF SCOTT POMERANTZ
1541 Ocean Blvd., Suite 200
Santa Monica, CA 90401
Telephone: (310) 656-9600
Email: scott@scottpomerantzlaw.com

*Attorney for Plaintiff*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| MARTIN SNEIDER, an individual, | **Case No. 2:23-cv-06840** |
| Plaintiff, | **COMPLAINT** |
| v. | **(JURY TRIAL DEMANDED)** |
| WOODSIDE CREDIT, LLC, a California limited liability company; JSC MOTORCARS LLC, dba "Cascio Motors," an Arizona limited liability company; ADDISON BROWN, an individual; ANDREA NICOLE DOHERTY, individually and dba "CPR Classic Sales," "California Porsche Restorations" and "CPR Classic Restoration; PAUL MANGIAMELE, an individual, and DOES 1 through 50, | |
| Defendants. | |

Plaintiff Martin Sneider ("Plaintiff") hereby invokes this Court's jurisdiction pursuant to 28 U.S.C. § 1332(a) and alleges as follows based upon information and belief except as to those matters directly involving Plaintiff or counsel:

COMPLAINT

1

## I.    <u>SUMMARY OF ACTION</u>

1.    This matter involves the conversion and fraudulent taking of a 1973 Porsche 911S Targa (the "Porsche").  As described below, multiple collectible car industry insiders acted unlawfully in order to either enrich themselves or shift their own losses onto an innocent third-party.

2.    In May 2021 Plaintiff acquired the Porsche from Defendant Andrea Nicole Doherty.  Doherty is the sole proprietor of the auto dealership "CPR Classic" in Fallbrook, CA.  As a resident of Missouri, upon purchase of the car Plaintiff obtained a valid Missouri title.  In early-2022, Plaintiff returned the Porsche to CPR Classic for warranty service.  Instead of taking the car back Plaintiff decided to allow Doherty to try to market and sell the car on consignment.  Doherty featured the car on CPR Classic's website and maintained it in the dealership's showroom in Fallbrook.

3.    In or around mid-2022 Doherty received cash and a trade-in car for the Porsche.  Doherty did not, however, inform Plaintiff of her receipt of these items. Defendant Woodside Credit, LLC ("Woodside") of Newport Beach financed the $100,000 cash payment on behalf of its borrower Defendant Paul Mangiamele of Pompano Beach, Florida.  Woodside did so even though Doherty did not have the title to secure Woodside's loan.  Since Plaintiff still had the title in Missouri, Doherty could not transfer ownership to Mangiamele and deliver the car to him.

4.    Shortly thereafter, Woodside apparently learned of Doherty's/CPR Classic's financial distress.  Concerned about its financial exposure to Doherty's operation, Woodside seized a number of cars from CPR Classic's showroom – including the Porsche.  Woodside took possession of the Porsche even though Doherty objected and Woodside knew that it had no legal right to take it.

5.    By early-2023, Doherty was running out of time stalling Plaintiff who had cancelled the consignment multiple times and was demanding the return of his car.

6.    Woodside knew Mangiamele would never repay his loan if it did not

COMPLAINT

2

deliver him the car.  Moreover, he might seek legal redress for his trade-in car.  Thus, Woodside somehow needed to secure the title to the Porsche.

7.     Woodside used Defendant Addison Brown, a principal of Defendant JSC Motorcars LLC dba Cascio Motors ("Cascio Motors") in Scottsdale to forge a Missouri duplicate title application in Plaintiff's name.  Brown succeeded in obtaining a duplicate title which she had sent directly to her dealership by the Missouri Department of Revenue.

8.     Adding urgency to Woodside's predicament, upon information and belief Doherty reported that Plaintiff's attorney personally visited her showroom unannounced looking for Plaintiff's car.

9.     Thereafter, upon information and belief either Woodside or Brown forged Plaintiff's endorsement a second time on the Missouri duplicate tit le in order to obtain a California "dealer title" with Woodside as the lienholder (or "legal owner") and Mangiamele as the registered owner.  After some additional title work to correct the VIN, Mangiamele eventually obtained a Florida title.

10.     Plaintiff believes the Porsche remains in Mangiamele's possession in Pompano Beach, Florida.

11.     By and through this action, Plaintiff seeks a declaration that the title obtained by Woodside for Mangiamele is void as the product of multiple fraudulent title instruments.  In addition, Plaintiff seeks monetary damages against all of the defendants for their conversion and participation in a conspiracy to deprive Plaintiff of his property and shift their losses onto him.

## II.     JURISDICTION AND VENUE

12.     Complete diversity exists between Plaintiff and the defendants in this action.  Plaintiff is a resident of Missouri whereas all of the entity and individual defendants are residents of California, Arizona or Florida.

13.     Each and every one of the defendants systematically did business in California and engaged in physical conduct in California that was particular to

COMPLAINT

Plaintiff's claims that arose in California.

14.     This action also satisfies the jurisdictional amount.  It is brought, in part, to recover possession and/or damages for Plaintiff's loss of the Porsche which has a value of approximately $250,000 or a value far exceeding the sum of $75,000.

15.     In addition, Plaintiff seeks monetary damages against the defendants in excess of $75,000.

16.     Since complete diversity exists between the parties and the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, this Court has jurisdiction under 28 U.S.C. section 1332(a)(1).

17.     Venue is proper in this district pursuant to 28 U.S.C. section 1391(a) as the district in which Woodside resides and (2) a district in which a substantial part of the events or omissions giving rise to the claims herein occurred.

### III.   THE PARTIES

18.     Plaintiff Martin Sneider is an individual who at all relevant times resided in the city of Clayton located in St. Louis County, Missouri.

19.     Woodside Credit, LLC is a California limited liability company located at 895 Dove St. in Newport Beach.  Its primary business is lending money to buyers for the purchase of collectible automobiles.

20.     JSC Motorcars LLC, dba "Cascio Motors" (hereinafter "Cascio Motors") is an Arizona limited liability company and licensed auto dealer specializing in collectible cars.  It is licensed by the Arizona Department of Transportation under license no. L00012937 and is located at 8455 N 90th St. in Scottsdale, Arizona.

21.     Plaintiff is informed and believes and based upon such information and belief alleges that Defendant Addison Brown ("Brown") is a resident of Maricopa County, Arizona and a member and manager and/or officer of Cascio Motors.

22.     Plaintiff is informed and believes and based upon such information and belief alleges that Defendant Andrea Nicole Doherty ("Doherty") is a resident of the unincorporated community of Fallbrook located in northern San Diego County.

COMPLAINT

4

23.     Plaintiff is informed and believes and based upon such information and belief alleges that Andrea Doherty is the owner of the businesses located in Fallbrook during business as "CPR Classic Sales," "California Porsche Restoration," and "CPR Classic Restoration."[1]  CPR Classic Sales is licensed by the California Department of Motor Vehicles to act as a "used auto/commercial vehicle dealer" under license number 47956 at the location of 311 Industrial Way, Fallbrook, California 92028.  The business known as California Porsche Restoration is licensed by the California Bureau of Automotive Repair to act as an automobile repair dealer under license number 268765 with its address being 309 Industrial Way, Fallbrook, California 92028.

24.     Defendant Paul Mangiamele ("Mangiamele") is a resident of Pompano Beach, Florida.

25.     Plaintiff is not aware of the true names, identities, or capacities of the Defendants sued herein as Does 1 through 50, inclusive, and therefore sues said Defendants by such fictitious names.  Plaintiff is informed and believes that, at various relevant times, said Doe Defendants participated in, or otherwise were in some manner responsible for the harm that arose from the facts and occurrences alleged in this complaint. Plaintiff will seek leave of the court to amend this complaint to state the true names of the fictitiously named Defendants once they are discovered.

### IV.     FACTUAL ALLEGATIONS

### A.     Grounds for Factual Allegations Pertaining to Fraud and Coordination among Defendants

26.     Plaintiff bases many of the allegations herein upon facts obtained through the use of a private investigator.  Plaintiff's private investigator had pre-existing professional relationships with both Woodside's ownership and top management as well as with Brown and Casio Motors.  This allowed him to collect and report

---

[1] The terms "Doherty" and "CPR Classic" may be used interchangeably herein as CPR Classic is a sole-proprietorship belonging to Doherty.

COMPLAINT

information to Plaintiff's counsel that serves as the basis for this Complaint. Plaintiff's private investigator also had many discussions with Doherty concerning the events alleged herein that were reported to Plaintiff's counsel.  In addition, Plaintiff's counsel interviewed both Doherty and Brown concerning the events alleged herein.

**B.    CPR Classic Was Consignee of Plaintiff's 1973 911S Targa Titled in Missouri**

27.    Plaintiff is an 80-year-old retiree and car enthusiast residing in the St. Louis area who at all relevant times was the sole owner of a 1973 silver Porsche 911S Targa, vehicle identification number 9113310886  (the "Porsche").

28.    In May 2021, Plaintiff purchased the Porsche from Doherty at CPR Classic.  Plaintiff obtained a valid transfer of title, and on June 4, 2021 the Missouri Department of Revenue issued Plaintiff a Certificate of Title in his name.  (Exhibit "A.")

29.    As part of the sales agreement CPR Classic warrantied the car for one year.  Thus, in October 2021 when the car had engine problems Plaintiff transported the car from Missouri back to CPR Classic in Southern California for repairs.

30.    Before CPR Classic returned the car, Plaintiff agreed to allow Doherty to try to sell the car on consignment, and they entered into a consignment agreement. (Exhibit "B.")

31.    Under the terms of the agreement, Plaintiff retained possession of his Missouri title.  If Doherty were able to complete a sale, Plaintiff was to send the title to Doherty.

**C.    Doherty Received Funds from Woodside and a Trade-In Vehicle from Mangiamele – But She Did Not Inform Plaintiff**

32.    Upon information and belief in mid-2022 Mangiamele from Pompano Beach, Florida decided he wanted to purchase the Porsche.  Woodside extended a loan of $100,000 towards the purchase price and a trade-in Ferrari covered the rest.

33.    Woodside is a Newport Beach-based auto loan vendor specializing in

COMPLAINT

high value collectible cars.  In addition to extending the loan to Mangiamele it also provided title work services and acted as an agent for its out-of-state client. Woodside wired the $100,000 to Doherty and did so notwithstanding that it knew that Doherty did not have the title.  Accordingly, Woodside could not secure its loan on the Porsche.  In order for a lender such as Woodside to create a security interest in a car held on consignment it must record its lien on the car's title.

34.    Upon information and belief, as an industry insider Woodside was aware that CPR Classic and other collectible car dealers sometimes engage in the practice of accepting money for a car on consignment but delaying payment to the original owner and transferring title to the new owner.  Although deceptive, this delay allows dealers to use the funds as working capital to buy and sell additional cars without financing costs – usually without any negative consequences.

35.    Accordingly, Woodside was aware of the risk it accepted by lending money for the purchase of the Porsche without the title in-hand.

36.    Doherty did not inform Plaintiff that she had received any funds for his car and that he should send in his title. Therefore, the title remained with Plaintiff in Missouri, and the Porsche remained on CPR Classic's website as available to interested buyers.

37.    By June 2022, Plaintiff decided to terminate the consignment because no sale had been made.  He emailed Doherty his 30-day notice.

**D.    Woodside Seized the Porsche from Doherty and Both Hid This Development from Its Owner – Plaintiff**

38.    Upon information and belief, in July 2022 Woodside learned of rumors concerning CPR Classic's finances and feared a collapse of Doherty's business.  This caused fear of never being repaid by Mangiamele for the $100,000 it tendered to Doherty as well as liability to Mangiamele for the loss of his Ferrari.

39.    In desperation Woodside officer Alexander Ramos traveled to CPR Classic's showroom unannounced along with an auto repossession agent with auto

transport equipment.[2]  Ramos told Doherty that Woodside was taking possession of the Porsche and she had no choice – even though Woodside knew that it had no security interest or legal right to take it.[3]

40.     Woodside transported the Porsche to a secure facility in Newport Beach. It intentionally did not notify Plaintiff that it was holding his car even though it had access to a database that would have provided his contact information.  Further, Woodside did not report the car's VIN to the DMV as a repossessed vehicle because this would have alerted Plaintiff to its activities.

41.     During the latter half of 2022, Doherty continued to stall Plaintiff in order to avoid explaining why she could not return the Porsche.  For example, she claimed that she herself would purchase the car for CPR Classic's inventory – but her promised wire transfers never materialized.

42.     On December 22, Plaintiff again emailed Doherty to "[p]lease ship my car immediately."

**E.     Woodside Used Brown and Cascio Motors to Obtain a Fraudulent Missouri Duplicate Title in Plaintiff's Name**

43.     In order to place its security interest on the Porsche's title, Woodside enlisted the help of one of its contacts – Addison Brown with Cascio Motors.  Cascio Motors is an auto dealer in Scottsdale, Arizona specializing in exotic sports cars.

44.     On or about January 18, 2023, on behalf of Woodside and at its direction Brown forged a duplicate title application in Mr. Sneider's name.  (Exhibit "C.")  Brown then submitted the application to the Missouri Department of Revenue.  Brown

---

[2] The timing of Woodside's seizure of the Porsche is uncertain due to conflicting accounts.

[3] *See Quartz v. Mullen Bros*. (2007) 151 Cal.App.4th 901, 908 (holding that no security interest attaches to any vehicle until the secured party has deposited "a properly endorsed certificate of ownership… showing the secured party as legal owner.").

COMPLAINT

used her own notary public commission to notarize her forgery:



45.     As the "reason" for the application, Brown checked "LOST" even though she knew this was false.  (Exhibit "C.")  Also, she specified that the duplicate title should be sent directly to Cascio Motors' address in Scottsdale so Plaintiff would not discover her and Woodside's activities until it was too late.  (*Id.*)

**F.     Plaintiff's Counsel Visited CPR Classic Looking for the Porsche**

46.     In February 2023, Doherty was still promising to send the Porsche back to Plaintiff but kept making excusing for her delay.  On February 14, 2023, Plaintiff's attorney went to CPR Classic's showroom in Fallbrook to confirm that the Porsche was there.  In fact, the Porsche was not in the showroom.  When questioned Doherty falsely stated that the car had been sent for a minor upholstery repair before it could be transported to Plaintiff.

47.     In reality, Woodside was holding the Porsche in Newport Beach trying to complete its fraudulent title work.

**G.     After Forging Plaintiff's Signature a Second Time, Woodside Obtained a Fraudulent California Title**

48.     Upon information and belief, Doherty was contact with Woodside concerning the Porsche and notified its management that an attorney for its owner was looking it and demanding evidence that she still had possession of it.

49.     Around this same time, Woodside received the fraudulent duplicate title

COMPLAINT

issued by the Missouri Department of Revenue and sent to Casio Motors.

50.     Upon information and belief, on or about February 17, 2023 Brown or another agent of Woodside forged Plaintiff's signature *a second time* on the Missouri duplicate title.  This signature served to give the appearance of transferring title to Woodside as "legal owner" since it purported to be a secured lender as to the Porsche. Upon information and belief, at all relevant times Mangiamele was aware of Woodside's activities.

51.     Woodside then used a Bay Area third-party vendor – whose identity is presently unknown to Plaintiff – in the California DMV's "Business Partner Automation" ("BPA") program.  This third-party vendor processed the fraudulently obtained and endorsed Missouri duplicate title so that the California DMV would issue a California "dealer's title" as reflected in the DMV records.

52.     In addition, the California dealer's title contained a single-digit error in the middle of the VIN – a missing "1."  This error is such that it may be easily overlooked by third-parties, and Plaintiff alleges that this error was intentional on the part of Woodside in order to circumvent any DMV holds (or "VLT stops") on the title.  They knew that the owner's attorney was looking for the car, and a VLT stop was not unlikely and would have squelched their plan.

```
DATE/TIME OF RESPONSE: 03/29/23 13:44
LIC/VIN: 911330886

PNO VALID FROM: 02/17/23
REG VALID FROM: 01/28/22 TO 01/28/23
LIC#:5QRP395 YRMD:73 MAKE:PORS BTM :CP
VIN :911330886
CLAS:MA *-YR:22
TYPE:CO VEH :13 BODY:O POWR:G LOCD:M

OWNER AS OF 02/20/23

PURCHASE/APPLICATION: 00/00/00

OWNER ISS: 02/17/23 REG ISS: 02/17/23
PRIOR R/O:MANGIAMELE PAUL MICHAEL, 1600 S OCEAN BLVD MPH03, POMPANO BEACH
CITY:FL
PRIOR L/O:WOODSIDE CREDIT, PO BX 12379
CITY:NEWPORT BEACH

REC STATUS:
02/17/23 MA CLASS VEHICLE VALUE: 0235000
TIP OFC:518 D:03/27/23 ID/S:F19441 T:K00
V:0000000 R:35Z          RT:
PNO-REGISTRATION DEFERRED
VEHICLE CURRENTLY NOT REGISTERED

01/26/2023-ODOMETER:       2,310 MILES ACTUAL MILEAGE
END OF DATA
```

COMPLAINT

**H.      Mangiamele Ignored Efforts by Plaintiff and Law Enforcement to Reach Him**

53.      By February 28, 2023, Plaintiff had identified Mangiamele as Woodside's borrower.  Plaintiff's counsel sent text messages and overnight correspondence to Mangiamele demanding that he cease and desist from any activities to take either possession or title to the car.  At a minimum by February 28, counsel informed Mangiamele that based their investigation the car might have been stolen. Mangiamele did not respond.  Nor did he respond to telephone calls from the CHP detective who had begun investigating the mishandling of the Porsche.

54.      On March 8, 2023, after learning more about Woodside's ongoing activities Plaintiff's counsel sent Mangiamele another letter via Fedex and email demanding the immediate return of the car.  Once again counsel received no response.

**I.      Woodside Shipped the Porsche to Mangiamele in Florida but He Could Not Obtain a Florida Title**

55.      Upon information and belief, Woodside demanded that Mangiamele pay the balance of the loan before it would ship the Porsche to him in Florida.  In either late-February or early-March Mangiamele paid the full balance of the loan, and Woodside shipped the car.

56.      Mangiamele still needed, however, to convert his California-issued dealer's title to a standard Florida title in his name.  Because of the mismatched VIN Florida authorities rejected Mangiamele's title application.

**J.      Mangiamele Became an Active Participant Even after Being Fully Apprised of the Fraud**

57.      On March 27, Plaintiff's counsel send a letter to Doherty, Woodside and Mangiamele stating Plaintiff's understanding of the course of events and the suspected multiple acts of fraud that were the foundation of Mangiamele's title.  Also, the letter demanded that the parties cease and desist activities processing the title work:

At this time, there is apparently a CA DMV-

COMPLAINT

issued "dealer's title" with a single-digit error in
the VIN showing Mr. Mangiamele as the owner…
This error has prevented Mr. Mangiamele from
titling the car in Florida.  Apparently, Mr.
Mangiamele has indicated that he was working to
obtain a new title – which requires obtaining more
paperwork from the CA DMV.

*** 

[M]y client respectfully demands that Mr.
Mangiamele refrain from knowingly participating
in these activities.

58.     Plaintiff received no response from either Mangiamele or the other
recipients to the letter.  Also, apparently Mangiamele continued working with
Woodside to finalize the title work even after made aware of the underlying
misconduct.

59.     Upon information and belief, Mangiamele obtained the needed changes
to the fraudulent title from the California DMV.  Thereafter, the Florida Department of
Safety and Motor Vehicles issued Mangiamele a standard title to the Porsche with the
correct VIN.

60.     Plaintiff alleges that Mangiamele continues to possess the Porsche. His
possession and alleged ownership is based upon a title that is the product of multiple
acts of fraud committed in California, Arizona, Missouri and Florida.  These acts of
fraud involve, at a minimum, two licensed auto dealers and an auto lender prominent
in the collectible car industry.

## V.     CLAIMS FOR RELIEF

### FIRST CAUSE OF ACTION – FRAUDULENT MISREPRESENTATION

**(Against Doherty, Woodside, Brown, Cascio Motors and Does 1-50)**

61.     Plaintiff incorporates the allegations of each and every preceding

COMPLAINT

12

paragraph as though set forth herein in their entirety.

62.    At all relevant times Plaintiff has held a right of ownership in and right of possession to the Porsche.

63.    Doherty, Woodside, Brown and Cascio Motors committed acts of fraud in their respective roles and capacities that proximately resulted in Plaintiff's loss of possession of his property, a controversy concerning rightful ownership and other damages.

**Doherty**

64.    Doherty committed fraud in by making the following misrepresentations all designed to delay Plaintiff and prevent him from discovering that she had lost possession of Porsche to Woodside:

- Emailing Plaintiff on November 2, 2022 and writing that she would agree to purchase the Porsche from him when she had no intention to do so;
- Stating to Plaintiff on November 7, 2022 that she would be providing a "sales agreement" for her purchase of the Porsche;
- Representing to Plaintiff on or about November 20, 2022 that she had initiated a wire transfer to him for $215,000 when she had not done so;
- Continuing to represent to Plaintiff that she would be wiring funds on December 2, 2022; and
- Representing to Plaintiff on January 18, 2023 that she had just sold the Porsche to a third-party buyer.

**Woodside**

65.    Woodside committed fraud by and through each of the following wrongful acts:

- Paying Brown and/or her company Cascio Motors to submit a fraudulent duplicate title application in Plaintiff's name and with a

forged signature to the Missouri Department of Revenue;

- Arranging for the duplicate Missouri title – once issued and secured by Brown/Cascio Motors – to be endorsed to Woodside as legal owner using a forged signature;

- Submitting the fraudulently endorsed duplicate title to a private, California DMV BPA-partner;

- Submitting a title application to the State of California intentionally using a slightly altered-VIN to try to circumvent any title stops by the California DMV and to avoid detection;

- Transferring the California fraudulent title to Mangiamele's name alone after Mangiamele paid Woodside's loan and shipping the Porsche to Florida; and

- Upon information and belief, using its contacts with DMV-BPA vendors to facilitate Mangiamele's VIN-correction so that Mangiamele could obtain a Florida title.

**Brown and Cascio Motors**

66.    Brown/Cascio Motors committed fraud by and through each of the following wrongful acts:

- Preparing and submitting to the Missouri Department of Revenue a forged duplicate title application in Plaintiff's name;

- Notarizing Brown's own forgery as a genuine signature;

- Upon information and belief, forging Plaintiff's signature on the duplicate title in order to obtain a California title with Woodside listed as lienholder and Mangiamele as registered owner; and

- Tendering the duplicate title to Woodside knowing that it was a fraudulent document that would be used to protect Woodside's financial interests and, ultimately, deprive Plaintiff of his property.

67.    By committing the forgoing acts, the above-named defendants

COMPLAINT

14

intentionally and substantially interfered with Plaintiff's ownership interests in the Porsche and caused harm to Plaintiff.

68.     Each of the aforementioned defendants knew that its representations were false when they made them or that they made representations recklessly and without regard for the truth.

69.     Each of the aforementioned defendants intended that Plaintiff rely upon their misrepresentations, and these misrepresentations were a substantial factor in causing Plaintiff's harm.

70.     Plaintiff reasonably relied upon each one of the misrepresentations.

71.     Plaintiff has suffered, and will continue to suffer, damages and losses as a result of Defendants' unlawful taking of his property, including, but not limited to, the use and enjoyment of the Porsche, the value of the Porsche, the use of the Porsche for economic benefits, expenses associated with recovering the Porsche, costs of litigation, and any other such further damages as may be proved at the trial of this matter.

72.     In doing the acts and omissions herein alleged, the above-named defendants acted with oppression, fraud, and malice, and Plaintiff is entitled to punitive and exemplary damages.

## SECOND CAUSE OF ACTION – AIDING AND ABETTING FRAUD
### (Against Brown, Casio Motors and Does 1-50)

73.     Plaintiff incorporates the allegations of each and every preceding paragraph as though set forth herein in their entirety.

74.     Plaintiff was harmed by the fraud committed by Woodside, and Brown and Cascio Motors are responsible for the harm because each of them aided and abetted Woodside in committing these actions.

75.     Upon information and belief, Brown and Casio Motors knew that fraud was being committed by Woodside against Plaintiff based upon the unusual and overtly unlawful nature of Brown's tasks.

COMPLAINT

76.     Brown and Cascio Motors each gave substantial assistance and encouragement to Woodside by forging and then submitting to the State of Missouri, Department of Revenue a false duplicate title application.

77.     Brown and Cascio Motors' conduct was a substantial factor in causing harm to Plaintiff.  Woodside would not have been able to commit its fraud if it had been unable to locate a willing auto dealer and notary to prepare the title application and entice the Missouri Department of Revenue to send a duplicate title to an addressee other than Plaintiff.

78.     As a direct and proximate result of Brown and Cascio Motor's aiding and abetting fraud, Plaintiff was unable to prevent the events described from occurring and thereby suffered damage in excess of $250,000 or according to proof.

79.     In doing the acts and omissions herein alleged, the Brown and Woodside acted with oppression, fraud, and malice, and Plaintiff is entitled to punitive and exemplary damages.

## **THIRD CAUSE OF ACTION – FRAUDULENT NONDISCLOSURE**
### **(Against Doherty and Does 1-50)**

80.     Plaintiff incorporates the allegations of each and every preceding paragraph as though set forth herein in their entirety.

81.     At all relevant times, Doherty had a duty to disclose to Plaintiff relevant and material facts to Plaintiff concerning Plaintiff's property which she held in trust and as a licensed California auto dealer.

82.     Notwithstanding these duties, Doherty breached her duty to disclose and concealed from Plaintiff the true facts surrounding the consignment and bailment of the Porsche including, but not limited to that Woodside had seized possession of the Porsche and had loaned money to a third-party intended for the purchase of the Porsche.

83.     Doherty failed to disclose and suppressed this information over the course of weeks or months in order to induce Plaintiff to take no action to recover

COMPLAINT

possession of the Porsche.

84.   If Plaintiff had been advised of the circumstances he would have had sufficient time to prevent Woodside from processing a fraudulent title in Plaintiff's name and obtaining an ostensible security interest, enticing payment from Mangiamele and transporting the Porsche to Mangiamele in Florida.

85.   As a direct and proximate result of Doherty's above-described fraudulent nondisclosures, Plaintiff was unable to prevent the events described from occurring and thereby suffered damage in excess of $250,000 or according to proof.

86.   In doing the acts and omissions herein alleged, Doherty acted with oppression, fraud, and malice, and Plaintiff is entitled to punitive and exemplary damages.

## FOURTH CAUSE OF ACTION – CONVERSION

### (Against Doherty, Woodside and Mangiamele including Does 1 through 50)

87.   Plaintiff incorporates the allegations of each and every preceding paragraph as though set forth herein in their entirety.

88.   Also, at all relevant times Plaintiff had a right to possess the Porsche.

89.   Pursuant to the Consignment Agreement with Doherty, Plaintiff reserved the right to cancel the agreement and demand the return of the Porsche. Notwithstanding Plaintiff's multiple notices of cancellation and demands that Doherty return the Porsche she unlawfully retained possession and exercised her dominion over Plaintiff's property.

90.   In addition, upon information and belief beginning in mid-2022 Woodside unlawfully seized the Porsche from Doherty's showroom and unlawfully retained possession and exercised its dominion over it.

91.   Upon information and belief, Mangiamele wrongfully executed California and Florida state vehicle ownership forms after having learned of the underlying fraud described herein in order to obtain a Florida title.  At the present time, Mangiamele retains unlawful possession and dominion over Plaintiff's property.

COMPLAINT

17

92.     Plaintiff has suffered, and will continue to suffer, damages and losses as a result of Defendants' act of conversion, including, but not limited to, the use and enjoyment of the Porsche, the value of the Porsche, the use of the Porsche for economic benefits, expenses associated with recovering the Porsche, costs of litigation, and any other such further damages as may be proved at the trial of this matter.

93.     In doing the acts and omissions herein alleged, Defendants acted with oppression, fraud and malice, and Plaintiff is accordingly entitled to exemplary damages.

94.     WHEREFORE, judgment should be entered against Defendants in an amount according to proof and in accordance with any further relief this Court deems just and equitable.

**FIFTH CAUSE OF ACTION – AIDING AND ABETTING CONVERSION**

**(Against Brown and Cascio Motors including Does 1 through 50)**

95.     Plaintiff incorporates the allegations of each and every preceding paragraph as though set forth herein in their entirety.

96.     Plaintiff was harmed by the conversion committed by both Woodside and Mangiamele.  Brown and Cascio Motors are responsible for the harm because each of them aided and abetted Woodside and Mangiamele in committing the conversion alleged herein.

97.     Upon information and belief, Brown and Casio Motors knew that conversion was being committed by Woodside and Mangiamele against Plaintiff based upon the unusual and overtly unlawful nature of Brown's tasks with respect to the Porsche.

98.     Brown and Cascio Motors each gave substantial assistance and encouragement to Woodside by forging and then submitting to the State of Missouri, Department of Revenue a false duplicate title application.

99.     Brown and Cascio Motors' conduct was a substantial factor in causing

COMPLAINT

harm to Plaintiff.  Woodside would not have been able to commit its conversion if it had been unable to locate a willing auto dealer and notary public to prepare the title application and entice the Missouri Department of Revenue to send a duplicate title to an addressee other than Plaintiff.

100.  As a direct and proximate result of Brown and Cascio Motor's aiding and abetting conversion, Plaintiff was unable to prevent the events described from occurring and thereby suffered damage in excess of $250,000 or according to proof.

101.   In doing the acts and omissions herein alleged, the Brown and Woodside acted with oppression, fraud, and malice, and Plaintiff is entitled to punitive and exemplary damages.

### SIXTH CAUSE OF ACTION – DECLARATORY RELIEF
### (Against Mangiamele and Does 1-50)

102.  Plaintiff incorporates herein the allegations of each and every preceding paragraph as though set forth herein in their entirety.

103.   An actual controversy has arisen between Plaintiff and Mangiamele regarding whose title to the Porsche is the valid title and who is the rightful owner of the Porsche.  Plaintiff holds a Missouri certificate of title, and Mangiamele obtained a Florida certificate of title as described herein.

104.    Plaintiff and Mangiamele dispute whether Mangiamele's title is lawful and valid.  Plaintiff asserts that only *his* title is lawful and valid and that Mangiamele's title is a product of multiple forgeries and acts of fraud and is accordingly void.

105.   Based upon the above, Plaintiff seeks a declaratory judgment from this Court pursuant to Federal Rule of Civil Procedure 57 and 28 U.S.C. § 2201that his title is the sole valid title to the Porsche and vests ownership in him and that possession of the Porsche should be restored to him.

106.   This Court's declaration of the rights and obligations as described herein is necessary to resolve the pending disputes between Plaintiff and Mangiamele. Absent a decree Plaintiff will suffer irreparable and irreversible harm by the loss of his

1  valuable property rights.

2      107.   By this action Plaintiff also seeks an order preliminarily and permanently

3  enjoining Mangiamele from attempting to transfer any purported ownership or

4  possession of the Porsche to any third-parties and, in addition, an order transferring

5  possession of the Porsche to a neutral party to safeguard the asset until the resolution

6  of this action.  A substantial likelihood exists that Plaintiff will prevail on the merits,

7  and Plaintiff will likely suffer irreparably harm

8          **SEVENTH CAUSE OF ACTION – UNJUST ENRICHMENT**

9           **(Against all Defendants including Does 1 through 50)**

10      108.   Plaintiff incorporates the allegations of each and every preceding

11  paragraph as though set forth herein in their entirety.

12      109.   Woodside was enriched as a result of its unlawful seizure of the Porsche

13  and fraudulent title work – including but not limited to the actions of its agents –

14  Brown and Cascio Motors.

15      110.   Brown and Cascio Motors were enriched as a result of the fee they

16  received from Woodside for their forgery and unlawful title work.

17      111.   Mangiamele was enriched by his eventual completion of a fraudulent

18  Florida title and by his current possession of the Porsche – although Plaintiff contests

19  his lawful ownership of the car.

20      112.   Woodside, Brown, Cascio Motors and Mangiamele knew or should have

21  known that the Porsche belonged to Plaintiff and that their actions to obtain a title

22  through fraudulent means wrongfully shifted their losses onto Plaintiff.

23      113.   Doherty was enriched by her failure to return the Porsche to Plaintiff,

24  failure to notify Plaintiff Woodside had seized the Porsche and by her receipt and

25  retention of monies and other consideration.

26      114.   Doherty knew or should have known that these monies were intended for

27  Plaintiff.

28      115.   Plaintiff has been impoverished as a result of these actions and is entitled

COMPLAINT

1   to restitution for the monies and/or property received by Defendants.

2       116.   If no adequate remedy at law is available for Plaintiff's impoverishment,

3   Plaintiff is entitled to recover under a theory of unjust enrichment and/or restitution.

4       **EIGHTH CAUSE OF ACTION – UNFAIR BUSINESS PRACTICES**

5       **(Against Woodside, Brown and Cascio Motors including Does 1 through 50)**

6       117.   Plaintiff incorporates the allegations of each and every preceding

7   paragraph as though set forth herein in their entirety.

8       118.   California Business & Professions Code sections 17200, *et seq.* (the

9   "UCL") prohibits "any unlawful, unfair or fraudulent business act or practice and

10  unfair, deceptive, untrue or misleading advertising."

11      119.   Woodside engaged in unlawful business acts or practices, including by:

12          •   Seizing possession of the Porsche without any legal right with the

13             intent to deprive Plaintiff of his title and possession thereof in

14             violation of California Vehicle Code section 10851;

15          •   Hiring Brown and Cascio Motors to forge a duplicate title

16             application to submit to the Missouri Department of Revenue in

17             violation of Missouri criminal code section 570.090; and

18          •   Fraudulently endorsing (or directing someone else to fraudulently

19             endorse) the duplicate title to obtain a dealer's title with an altered

20             VIN and an alleged security interest in the Porsche in violation of

21             California Vehicle Code section 20.

22      120.   Brown and Cascio Motors engaged in unlawful business acts or practices,

23  including by:

24          •   Forging a duplicate title application to submit to the Missouri

25             Department of Revenue in violation of Missouri criminal code

26             section 570.090; and

27          •   Upon information and belief fraudulently endorsing the duplicate

28             title to obtain a dealer's title with an altered VIN and an alleged

COMPLAINT

security interest in the Porsche in violation of California Vehicle Code section 20.

121.   Woodside engaged in fraudulent business acts or practices, including by:

- Hiring Brown and Cascio Motors to forge a duplicate title application to submit to the Missouri Department of Revenue; and
- Fraudulently endorsing (or directing someone else to fraudulently endorse) the duplicate title to obtain a dealer's title with an altered VIN and an alleged security interest in the Porsche.

122.   Brown and Cascio Motors engaged in fraudulent acts or practices, including by:

- Forging a duplicate title application to submit to the Missouri Department of Revenue; and
- Upon information and belief fraudulently endorsing the duplicate title to obtain a dealer's title with an altered VIN and an alleged security interest in the Porsche.

123.   Accordingly, Plaintiff may obtain all remedies and penalties authorized by the statute, including without limitation, restitution, disgorgement and other penalties for each unlawful, fraudulent, and unfair business act or practice, and attorneys' fees pursuant to statute and the Court's equitable powers in an amount to be proven at trial.

## VI.   __PRAYER FOR RELIEF__

WHEREFORE, Plaintiff prays for judgment against defendants as follows:

1.   For preliminary and permanent injunctive relief sufficient to protect the property interest in question pursuant to 28 U.S.C. § 2202;

2.   For general damages against all defendants in an amount no less than $75,000;

3.   For an award of attorneys' fees and costs of suit herein incurred;

4.   For exemplary and punitive damages;

COMPLAINT

22

5.      Applicable pre-judgment interest; and

6.      For such other and further relief as the Court may deem proper.

### IX. <u>DEMAND FOR JURY TRIAL</u>

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a jury trial on all issues in this litigation that are triable to a jury.

Dated: August 19, 2023

LAW OFFICE OF
SCOTT POMERANTZ

By: __/s/ Scott Pomerantz_____
Scott Pomerantz
1541 Ocean Ave., Suite 200
Santa Monica, CA 90401

*Counsel for Plaintiff*

COMPLAINT